IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN T.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 1:24-cv-01738-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Brian T. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the Commissioner's decision and remands this case for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

PAGE 2 – OPINION AND ORDER

**BACKGROUND**

I. **PLAINTIFF'S APPLICATION**

Plaintiff was forty-two years old on April 23, 2021, his alleged disability onset date.[2] (Tr. 28, 176.) Plaintiff has at least a high school education and past work experience as a shipping checker. (*Id.* at 27-28.) In his application, Plaintiff alleged disability due to post concussive syndrome, shattered bilateral lower extremities, depression, and high blood pressure. (*Id.* at 202.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on April 6, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 109-13, 119-24.) On October 26, 2023, Plaintiff, along with his attorney and an impartial vocational expert ("VE"), appeared and testified at an administrative hearing before an ALJ. (*Id.* at 52.)

On January 24, 2024, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 29.) On October 9, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

///

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016 TAG, 2008 WL 4490024, at *4 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of December 31, 2021 (Tr. 21, 23) reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before December 31, 2021, he is entitled to DIB. *See Truelsen v. Comm'r of Soc. Sec.*, No. 2:15-cv-2386-KJN, 2016 WL 4494471, at *1 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998))).

PAGE 3 – OPINION AND ORDER

II.   **THE SEQUENTIAL PROCESS**

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

III.   **THE ADMINISTRATIVE LAW JUDGE'S DECISION**

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 21-29.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity during the period between his alleged onset date, April 23, 2021, and

PAGE 4 – OPINION AND ORDER

his date last insured of December 31, 2021. (*Id.* at 21, 23.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the lumbar spine, (2) status post multiple bilateral lower extremity fractures, and (3) tremors of the bilateral upper extremities. (*Id.* at 23.) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 25.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to these limitations: (1) "had to avoid walking on uneven surfaces," (2) "could never balance," (3) "could occasionally climb, stoop, kneel, crouch, or crawl," (4) "could frequently handle, finger, and feel bilaterally," (5) "had to avoid concentrated exposure to vibration and hazards," and (6) "had to use a hand-held assistive device to ambulate; but he could lift and carry up to the exertional limits with the contralateral upper extremity." (*Id.*)

At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a shipping checker. (*Id.* at 27.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a document preparer, escort driver, and election clerk. (*Id.* at 28.)

## DISCUSSION

The parties agree that the Court should reverse and remand the ALJ's opinion, but they disagree about the scope of the remand. (Pl.'s Br. at 27, ECF No. 8; Def.'s Br. at 2-8, ECF No. 10; Pl.'s Reply at 1-5, ECF No. 11.) Plaintiff argues that the Court should remand for the immediate payment of benefits because he has satisfied the requirements of the credit-as-true standard, crediting Plaintiff's testimony or the opinion of his treating physician, Dr. Ashley Bryson ("Dr. Bryson"), would require a finding of disability, and there is "no serious doubt" Plaintiff is disabled. (Pl.'s Reply at 1-5.) The Commissioner argues that Plaintiff has not satisfied the requirements of the credit-as-true standard because significant ambiguities remain, the record

PAGE 5 – OPINION AND ORDER

requires further development, and evidence from the relevant time period does not support a finding of disability. (Def.'s Br. at 2-8.)

I.  **REMAND**

    A.  **Applicable Law**

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted).

The credit-as-true standard is satisfied if: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

    B.  **Analysis**

Applying the credit-as-true standard here, the Court concludes that conflicts and ambiguities in the record remain and require further administrative proceedings.

For example, Plaintiff argues that the ALJ erred in evaluating Dr. Bryson's medical opinion. (Pl.'s Br. at 14-20; *see also* Tr. 1035-42.) In Dr. Bryson's opinion, he stated that

PAGE 6 – OPINION AND ORDER

Plaintiff had severe physical limitations, including: Plaintiff could sit, stand, and walk for less than two hours in an eight-hour work day; required an assistive device for ambulation; needed to elevate his legs hourly; had neuropathy in his hands, resulting in upper extremity limitations; was unable to use his lower extremities to ambulate more than ten feet or stand for more than ten to fifteen minutes; and would need to take hourly twenty-to-thirty minute breaks throughout the workday to recline or lie down due to pain in his legs. (Tr. 1035-42.) However, as the ALJ noted at the hearing, Dr. Bryson's opinion is dated August 31, 2023, with no indication that the limitations Dr. Bryson identified relate back to the relevant period of April 23, 2021 to December 31, 2021. (*Id.* at 65-67, 1035-42.) Thus, even if the Court were to credit Dr. Bryson's opinion as true, it does not necessarily establish that Plaintiff was disabled during the relevant time period.[3]

Further, conflicts remain between the record and Plaintiff's hearing testimony. At the hearing, Plaintiff testified that his feet are always swollen, half of his toes do not respond, and "they've never really woken up since the accident." (*Id.* at 69.) When discussing how he ambulates, Plaintiff testified he was in a wheelchair for the first year after the accident, and then "graduated to a cane." (*Id.* at 72.) This testimony conflicts with medical records from a visit Plaintiff had with a physical therapist on August 26, 2021, when Plaintiff appeared at the appointment without a wheelchair, walker, cane, or other kind of assistive device. (*Id.* at 860.) Plaintiff stated he did not have his cane with him because "he forgot it by the door." (*Id.*) This record conflicts with Plaintiff's hearing testimony that he was wheelchair-bound for the first year following the accident. (*Id.* at 72.)

---

[3] Of note, in a November 18, 2022, medical record, Dr. Bryson stated that "[w]e are just now starting therapies for pain control and swelling management" and "referral is being place to [physical therapy] and [occupational therapy] to better quantify limitations." (Tr. 1034.)

In addition, at a medical appointment with Dr. Edward Van Tassel a few weeks later on September 7, 2021, Plaintiff reported that he "is now able to walk pretty much like he always has." (*Id.* at 891.) Those medical records are inconsistent with Plaintiff's symptom testimony and Dr. Bryson's medical opinion (if the medical opinion in fact refers to this earlier time frame). Thus, even if the ALJ were to credit Plaintiff's testimony as true, the ALJ would need to resolve the conflicts and ambiguities that remain to determine if Plaintiff was disabled during the relevant time period.

Further proceedings will allow the ALJ to reevaluate the medical opinions, reevaluate Plaintiff's alleged impairments and any resulting functional limitations, reformulate the RFC, and obtain updated testimony from a vocational expert. Accordingly, further proceedings would serve a "useful purpose" here. *See Garrison*, 759 F.3d at 1020; *Treichler*, 775 F.3d at 1094 ("Given the conflicts and ambiguity that remain in the record, however, we remand for further proceedings rather than for an award of benefits."); *see also McAuley v. Kijakazi*, No. 21-16334, 2022 WL 2235462, at *1 (9th Cir. June 22, 2022) (holding that where "the district court determined that . . . 'conflicts and ambiguities' existed, . . . it was not an abuse of discretion for the district court to conclude that additional administrative proceedings were warranted" (citing *Treichler*, 775 F.3d at 1104-05)).

For these reasons, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings to allow the ALJ to reevaluate the medical opinions (including Dr. Bryson's opinion), reevaluate Plaintiff's alleged impairments, reformulate the RFC, and seek further VE testimony.

///

///

///

PAGE 8 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 29th day of October, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge